IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MANNATECH, INC. | § § | |
| Plaintiff, | § § | |
| VS. | § § | NO. 3-06-CV-0471-BD |
| GLYCOPRODUCTS INTERNATIONAL, INC. | § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mannatech, Inc. has filed a motion for judgment as a matter of law and a motion for permanent injunction in this patent and trademark infringement action. Defendant Glycoproducts International, Inc. f/k/a Glycobiotics International, Inc. has filed a renewed motion for judgment as a matter of law or, in the alternative, motion for new trial or remittitur on the issue of damages. For the reasons stated herein, all three motions are granted.

I.

Plaintiff is the owner by assignment of two patents for glyconutritional dietary supplements, U.S. Patent Nos. 6,929,807 ("the '807 Patent") and 7,157,431 ("the '431 Patent"). The '807 Patent claims a dietary supplement composition of nutritionally effective amounts of isolated and purified saccharides for the promotion and maintenance of good health. The '431 Patent is a continuation of the '807 Patent and shares a common specification. In this lawsuit, plaintiff alleges that a dietary supplement manufactured and sold by defendant under the brand name Glycomannan™ infringes one or more claims of the '807 and '431 Patents. Defendant denies any infringement and maintains that the patents in-suit are invalid for indefiniteness and lack of an adequate written description.

Plaintiff further alleges that defendant's website, www.glycomannan.com, contains statements that misrepresent the nature, characteristics, or qualities of Mannatech products sold under the registered trademark Ambrotose®.

The case was tried to a jury on May 5-9, 2008. After hearing the evidence, the jury found that defendant willfully infringed and willfully induced others to infringe claims 1, 2, 3, 6, 8 and 9 of the '431 Patent, that defendant did not infringe any claims of the '807 Patent, and that both patents contain an adequate written description of the claimed invention.[1] The jury also found in favor of plaintiff on its trademark infringement claim and determined that defendant realized $150,000 in profits attributable to the false advertising of Ambrotose®. Plaintiff now challenges the finding that defendant did not infringe claims 1, 5, 6, 8, and 9 of the '807 Patent and seeks a permanent injunction to prohibit defendant from engaging in future acts of patent infringement and false advertising. Defendant moves for judgment as a matter of law or, alternatively, a new trial or remittitur with respect to the damages found by the jury on plaintiff's false advertising claim.

II.

"The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Summit Technology Inc. v. Nidek Co., Ltd.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004). In the Fifth Circuit, judgment as a matter of law is appropriate if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Cano v. Bexar Co.*, No. 07-50921, 2008 WL 2329203 at *1 (5th Cir. Jun. 4, 2008), *quoting* FED. R. CIV. P. 50(a)(1); *see also Conkling v. Turner*, 18 F.3d 1285, 1300 (5th Cir. 1994). The court "must draw

---

[1] Prior to trial, the court determined as a matter of law that neither the '807 Patent nor the '431 Patent was invalid for indefiniteness. *See Mannatech, Inc. v. Glycoproducts, Inc.*, No. 3-06-CV-0471-BD, 2007 WL 4386244 at *5-6 (N.D. Tex. Dec. 14, 2007).

all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Cano*, 2008 WL 2329203 at *1, *quoting Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). A Rule 50 motion should be granted only if "the facts and inferences point so strongly and overwhelmingly in favor of the defendant[ ] that reasonable jurors could not have arrived at the verdict reached in this case[.]" *Fontenot v. Cormier*, 56 F.3d 669, 673 (5th Cir. 1995), *citing Crist v. Dickson Welding, Inc.*, 957 F.2d 1281, 1285 (5th Cir.), *cert. denied*, 113 S.Ct. 187 (1992).

A.

Plaintiff contends there is no legally sufficient evidentiary basis for the jury to find that defendant did not infringe claims 1, 5, 6, 8, and 9 of the '807 Patent. In support of this argument, plaintiff points to undisputed evidence that the accused product, Glycomannan™, contains nutritionally effective amounts of all eight saccharides listed in the patent. Apparently believing that the '807 Patent covers only dietary supplements comprised of saccharides in monomeric or pure form, as opposed to saccharides in polymeric form, the jury found that the patent was not infringed. Plaintiff maintains that such a finding is contrary to the court's claim construction and should be disregarded. Defendant has not filed a response to the motion.

Claim 1 of the '807 Patent recites:

> A dietary supplement composition, comprising: nutritionally effective amounts of isolated and purified galactose, glucose, mannose, N-acetylneuraminic acid, fucose, N-acetylgalactosamine, N-acetylglucosamine and xylose.

(Plf. Mot. JML App. at 19).[2] Prior to trial, the court construed "isolated and purified," the only claim term disputed by the parties, to mean "separated from other unwanted substances." *Mannatech, Inc.*

---

[2] Claim 1 is the sole independent claim of the '807 Patent. If claim 1 is infringed, defendant admits that claims 5, 6, 8 and 9 of the patent also are infringed. (*See* Plf. Mot. JML App. 240).

*v. Glycoproducts, Inc.*, 513 F.Supp.2d 754, 762 (N.D. Tex. 2007). In arriving at that construction, the court specifically rejected a limitation proposed by defendant that would require the isolated sugars to be "obtained alone" with a purity level of at least 95%. As the court explained:

> Importing a purity requirement of 95% or more would limit the claim to the specific embodiment disclosed in the written description. The Federal Circuit has cautioned against such an approach to claim construction, "even when a specification describes very specific embodiments of the invention or even describes only a single embodiment, unless the specification makes clear that 'the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive.'" (Citations omitted). Here, the patent specification makes clear that the invention includes sugars available from a wide variety of natural and synthetic sources, and that "the composition of the invention is not intended to be limited by the source from which the [sugars] are obtained."

*Id.* at 759. Notwithstanding this claim construction, defendant took the position throughout the trial that Glycomannan™ does not infringe the '807 Patent because the patent "applies only to highly purified saccharides in monomeric form." (Plf. Mot. JML App. at 235; *see also id.* at 239, 241-42, 244).

A jury may not consider its own meanings for disputed claim terms. Rather, it must apply the court's construction of those terms in its deliberations. *See Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366-67 (Fed. Cir. 2004). Consistent with its claim construction ruling, the court instructed the jury that the term "isolated and purified" means "separated from other unwanted substances." (Jury Chrg. at 11). The jury also was instructed that "comprising" means "that the invention includes or contains the listed requirements, but is not limited to those requirements." (*Id.*). At trial, the undisputed evidence established that Glycomannan™ is a dietary supplement composition (*see* Plf. Mot. JML App. at 232-33) that contains nutritionally effective amounts (*see id.* at 21-92, 923-230, 236-39, 256-60) of all eight saccharides listed in the '807 Patent (*see id.* at

241-44). Thus, the only way the jury could have found that the accused product does not infringe the patent was by relying on the distinction drawn by defendant and rejected by the court--that the eight saccharides found in Glycomannan™ are not "isolated and purified" because they are present in polymeric rather than monomeric form. Because that finding is contrary to the court's claim construction, the verdict cannot stand. Plaintiff is entitled to judgment as a matter of law that defendant infringed and induced others to infringe claims 1, 5, 6, 8, and 9 of the '807 Patent.

B.

In its post-trial motion, defendant argues that plaintiff should not recover $150,000 in profits attributable to the false advertising of Ambrotose®. The Lanham Act allows a plaintiff who proves infringement to recover damages, including an accounting of profits realized by the infringing party. *See* 15 U.S.C. § 1117(a). However, an award of profits is not automatic upon a finding of liability. *See American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 338 (5th Cir. 2008), *citing Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 349 (5th Cir. 2002), *cert. denied*, 124 S.Ct. 66 (2003). The statute expressly provides that the recovery of such damages is "subject to the principles of equity." 15 U.S.C. § 1117(a). "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." *Id.* § 1117(a). In deciding whether to award an accounting of profits, the court should consider:

(1) whether the defendant had the intent to confuse or deceive,

(2) whether sales have been diverted,

(3) the adequacy of other remedies,

(4) any unreasonable delay by the plaintiff in asserting his rights,

(5) the public interest in making the misconduct unprofitable, and

(6) whether it is a case of palming off.

*Quick Technologies*, 313 F.3d at 349, *citing Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998).

Considering these factors in light of the evidence presented at trial, the court declines to award an accounting of profits. The gravamen of plaintiff's trademark infringement claim is that defendant misrepresented the nature, characteristics, and qualities of Mannatech products through ads on its website stating that Ambrotose® capsules are comprised of "75% fillers." Although the jury found that defendant engaged in false advertising in violation of the federal trademark laws,[3] it determined that the violation was not willful. (*See* Jury Chrg. at 23). This finding suggests that defendant had no intent to confuse or deceive. *See Quick Technologies*, 313 F.3d at 349 ("It is obvious from our cases that willful infringement is an important factor which must be considered when determining whether an accounting of profits is appropriate."); *Seatrax, Inc. v. Sonbeck International, Inc.*, 200 F.3d 358, 372 n.9 (5th Cir. 2000) (noting lack of Fifth Circuit authority where an accounting of profits has been awarded without a finding of willfulness).

---

[3] Section 43(a) of the Lanham Act provides, in pertinent part:

> (1) Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> * * * *
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).

Nor has plaintiff adduced sufficient evidence that any of its sales were diverted as a result of the false advertising of its mark. In order to obtain an accounting of profits, a plaintiff must prove that the defendant benefitted from its alleged infringement. *See Logan v. Burgers Ozark Country Cured Hams, Inc.*, 263 F.3d 447, 464-64 (5th Cir. 2001). Profits are rarely awarded where the plaintiff cannot establish that the false advertising caused a decline in sales. *See Seatrax*, 200 F.3d at 372 n.8; *Pebble Beach*, 155 F.3d at 555. At trial, Terry Persinger, former President and CEO of Mannatech, testified that some sales associates complained about the false advertising by defendant of Ambrotose® glyconutritional products and that Mannatech lost sales by the presence of Glycomannan™ in the marketplace. (*See, e.g.* Plf. Resp. App. at 58, 63, 91). However, when asked if he could quantify or even estimate the amount of sales lost on account of such false advertising, Persinger responded:

> There is just no way. I know their sales have grown, but I can't quantify how many people went there instead of here. It is like asking people in Wal-Mart, you know.

(Plf. Resp. App. at 93). This testimony is beyond speculative.

The other *Pebble Beach* factors either are neutral or favor defendant. This is not a case of "palming off" and there is no suggestion that plaintiff unreasonably delayed in asserting its rights under the Lanham Act. And while requiring defendant to account for $150,000 in profits undoubtedly would serve plaintiff's interests, it would not necessarily serve the public interest. The permanent injunction requested by plaintiff and granted herein, prohibiting defendant from falsely advertising the nature, characteristics, and/or qualities of Ambrotose® glyconutritional products, provides an adequate remedy in light of the nature of the infringing conduct and its adverse effect on plaintiff. *See, e.g. Synergistic International, LLC v. Korman*, 470 F.3d 162, 176 (4th Cir. 2006) (damages not appropriate in trademark infringement action where an injunction will satisfy the

equities of the case); *Minnesota Pet Breeders, Inc. v. Schell & Kampeter, Inc.*, 41 F.3d 1242, 1247 (8th Cir. 1994) (same).

III.

Recognizing that money damages are not an adequate remedy in this case, plaintiff seeks a permanent injunction to prohibit defendant from engaging in future acts of patent infringement and false advertising. "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and [ ] such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394, 126 S.Ct. 1837, 1841, 164 L.Ed.2d 641 (2006). An injunction is warranted where the plaintiff proves that:

>   (1)   it has suffered an irreparable injury;
>
>   (2)   remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
>
>   (3)   considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
>
>   (4)   the public interest would not be disserved by a permanent injunction.

*Id.*, 126 S.Ct. at 1839; *see also Innogenetics, N.V. v. Abbott Laboratories*, 512 F.3d 1363, 1379 (Fed. Cir. 2008). The same test applies to a permanent injunction under the Lanham Act. *See Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137-38 (9th Cir. 2006).

Defendant has not filed a response challenging plaintiff's entitlement to an injunction on its patent infringement and false advertising claims. With no opposition by defendant, and compelling evidence that plaintiff has satisfied each of the *eBay* factors, the court grants the relief requested. Accordingly:

(1) Defendant Glycoproducts International, Inc. f/k/a Glycobiotics International, Inc., its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise are enjoined, for the term of the '807 Patent and the '431 Patent, from:

    (a) making, using, offering to sell, selling, or otherwise distributing within the United States, or importing into the United States, defendant's product, Glycomannan™, as well as colorable imitations thereof, including without limitation products that are substantially equivalent in composition to Glycomannan™, and any other products that infringe the '807 Patent and/or the '431 Patent ("Enjoined Products");

    (b) inducing infringement of the '807 Patent and/or the '431 Patent by, without limitation, encouraging or providing any assistance to others in making, using, offering to sell, selling or otherwise distributing within the United States, or importing into the United States, the Enjoined Products; and

    (c) supplying or causing to be supplied in or from the United States all or a substantial portion of the components of the Enjoined Products, where such components are uncombined in whole or in part, in such a manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the '807 Patent and/or the '431 Patent if such combination occurred within the United States; and

(2) Defendant Glycoproducts International, Inc. f/k/a Glycobiotics International, Inc., its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise are ordered:

    (a) to deliver to counsel for plaintiff any Enjoined Products which are in the possession, custody, or control of defendant, to be held in escrow for destruction after all appeals have been exhausted;

    (b) to make every reasonable effort to obtain the return of any Enjoined Products currently in the possession of any third party, including but not limited to customers of defendant who have purchased any of the Enjoined Products during the past six (6)

months, and to deliver the same to counsel for plaintiff to be held in escrow for destruction after all appeals have been exhausted; and

 (c) to provide a copy of this order granting injunctive relief to all persons involved in the importation, offering for sale, or sale of the Enjoined Products, and to all customers and other persons defendant induced to infringe the '807 Patent and/or the '431 Patent; and

 (3) Defendant Glycoproducts International, Inc. f/k/a Glycobiotics International, Inc., its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise are permanently enjoined from falsely advertising the nature, characteristics, and/or qualities of Ambrotose® glyconutritional products, including without limitation any advertising stating that Ambrotose® contains "fillers" or is weaker than the product examples described in the '807 Patent and/or the '431 Patent.

## CONCLUSION

Plaintiff's motion for judgment as a matter of law [Doc. #211], plaintiff's motion for preliminary injunction [Doc. #210], and defendant's renewed motion for judgment as a matter of law or, in the alternative, motion for new trial or remittitur on the issue of damages [Doc. #212] are granted. The court determines that:

1. Defendant infringed the '807 Patent by making, using, offering to sell, selling, or otherwise distributing its product, Glycomannan™, within the United States, and induced infringement of the '807 Patent by encouraging or providing assistance to others in making, using, offering to sell, selling or otherwise distributing Glycomannan™ within the United States;

2. Plaintiff is not entitled to an accounting of profits attributable to the false advertising of Ambrotose® glyconutritional products; and

3. Plaintiff is entitled to a permanent injunction prohibiting defendant from engaging in future acts of patent infringement and false advertising.

The parties are directed to draft a final judgment consistent with this memorandum opinion and order. A proposed judgment, approved as to form and signed by counsel for both parties, must be submitted electronically to Kaplan_Orders@txnd.uscourts.gov by **July 18, 2008.**

SO ORDERED.

DATED: July 9, 2008.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE